_____
                                        )
ROGER CHARLES DAY, JR.,                 )
                                        )
               Plaintiff,               )
                                        )
          v.                            )          Civil Action No. 17-1418 (EGS)
                                        )
U.S. DEPARTMENT OF STATE,               )
                                        )
               Defendant.               )
_____ )

## MEMORANDUM OPINION

Roger Charles Day, Jr. ("plaintiff"), brings this action under the Freedom of Information

Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of State ("State

Department" or "defendant").  This matter is before the Court on defendant's motion for

summary judgment (ECF No. 34)[1] and plaintiff's motion to amend his complaint (ECF No. 41-1

at 6-13).  For the reasons discussed below, the Court will grant the former and deny the latter.

## I. BACKGROUND

Plaintiff alleges that he was "imprisoned in Mexican Federal Prisons at the behest of the

United States" where he was subjected to "physical[] torture[] by Mexican officials with the full

knowledge and upon the orders of U.S. officials" in the months preceding his extradition to the

United States in December 2010.  Compl. (ECF No. 1) ¶ 3; *see* Def.'s Reformatted Statement of

_____
[1]  By minute order on April 24, 2019, the Court granted Defendant's Motion for Leave to File
Defendant's Corrected Motion for Summary Judgment, ECF No. 33.  The Clerk of Court
terminated defendant's original summary judgment motion, ECF No. 31, and docketed the
corrected motion, ECF No. 34, in a separate docket entry.

Material Facts As To Which There Is No Genuine Issue (ECF No. 39-1, "State SMF"). This civil action pertains to plaintiff's August 9, 2013, FOIA request to the State Department, Case Control Number P-2013-1467, for information about himself. State SMF ¶¶ 1-2; *see* Compl. ¶¶ 2-3; Def.'s Corrected Mem. of P. & A. in Support of Defs.' Mot. for Summ. J. (ECF No. 34, "Def.'s Mem."), Decl. of Eric F. Stein (ECF No. 34-1, "Stein Decl."), Ex. 2 at 1. In relevant part, the request states:

> This request should be directed to records specifically but not limited to, the US Embassy in Mexico between the years 2008 and 2011. The Records of Vice Counsel David Haskett working at the same embassy in 2010. As well as all documents [and] communications between the US Embassy and the United Mexican States regarding Roger Charles Day[,] Jr. and his torture and transfer to Villa Aldama prison in Veracruz[,] Mexico on August 12, 2009[.] Records from the OCS of the Bureau of Consular Affairs CA and Office of Legal Advisor of the D.O.S. and Office of Law Enforcement and Intelligence (L/LEI) with D.O.S.

Stein Decl., Ex. 2 at 2.

The Office of Information Programs and Services ("IPS") is responsible for responding to FOIA requests for State Department records. *Id.* ¶¶ 1-2. IPS staff "evaluates [each] request to determine which offices, overseas posts, or other records systems . . . may reasonably be expected to contain the records requested." *Id.* ¶ 15. Staff bases its determination "on the description of the records requested and a familiarity with the holdings of the [State] Department's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous . . . offices and Foreign Service posts and missions." *Id.* Here, the declarant states that IPS staff identified three components where documents responsive to plaintiff's FOIA request likely would be maintained: the Office of the Legal Advisor, the United States Embassy in Mexico City, and the Office of Overseas Citizens Services within the Bureau of Consular Affairs. *Id.* ¶ 18.

The State Department located a total of 54 responsive documents. *Id.* ¶ 37; State SMF ¶¶ 3-8. Of these documents, it released 17 in full, released 29 in part, and withheld eight documents in full. Stein Decl. ¶ 37; State SMF ¶ 36. Where the State Department withheld information, it relied on FOIA Exemptions 5, 6 and 7(C). *See generally* Stein Decl., Ex. 1 (ECF No. 34-2, "Vaughn Index"); State SMF ¶¶ 27-33. According to the declarant, the State Department searched all locations reasonably likely to maintain documents responsive to plaintiff's FOIA request and released all reasonably segregable information. Stein Decl. ¶ 37; State SMF ¶¶ 34, 37.

## II. DISCUSSION

### A. The State Department's Corrected Motion for Summary Judgment

#### 1. Summary Judgment Standard

The Court grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations omitted). "Under FOIA, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; as such, only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate." *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 6 (D.D.C. 2014) (citations omitted).

An agency may meet its burden solely on the basis of affidavits or declarations, *see Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999), as long as they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). The opposing party cannot survive summary judgment with "[m]ere allegations or denials in [his] pleadings[.]" *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). Rather, he "must come forward with 'specific facts' demonstrating a genuine issue." *Saldana v. Fed. Bureau of Prisons*, 715 F. Supp. 2d 10, 19 (D.D.C. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

### 2. Plaintiff's Response to the Corrected Summary Judgment Motion

The State Department filed its initial summary judgment motion (ECF No. 31) on April 17, 2019. The Court issued an order (ECF No. 32) on April 18, 2019 advising plaintiff of his obligations under the Federal Rules of Civil Procedure and the local rules of this Court to respond to defendant's motion. The order specifically warned plaintiff that, if he did not respond by May 31, 2019, the Court would treat the motion as conceded and, if warranted, enter judgment in defendant's favor. On April 19, 2019, defendant filed its motion (ECF No. 33) for leave to file a corrected motion for summary judgment. By minute order on April 24, 2019, the Court granted defendant leave to file its corrected motion and extended plaintiff's opposition deadline to June 21, 2019.

Pursuant to the Standing Order Governing Civil Cases Before Judge Emmet G. Sullivan (ECF No. 6), the party moving for summary judgment "shall include a separate document entitled Statement of Material Facts Not in Dispute . . . formatted as a two-column table," Standing Order ¶ 13.a. (emphasis removed), and "promptly provide an electronic copy in editable format to the opposing party," *id*. ¶ 13.b. By letter dated April 26, 2019 (ECF No. 37), plaintiff noted defendant's failure to submit its Statement of Material Facts in the proper format.

In its June 26, 2019 minute order, the Court directed defendant to resubmit its Statement of Material Facts by July 5, 2019, and extended plaintiff's opposition deadline to August 16, 2019. Defendant timely refiled Defendant's Reformatted Statement of Material Facts As To Which There Is No Genuine Issue (ECF No. 39-1) and served a copy on plaintiff.

On August 12, 2019, the Clerk of Court received an envelope from plaintiff containing four documents: (1) a two-page handwritten cover letter dated August 6, 2019 (ECF No. 41 at 1-2); (2) a one-page motion dated July 13, 2019, which the Court construes as a request to deny defendant's corrected motion for summary judgment (ECF No. 41 at 3, "Pl.'s Mot. to Deny MSJ"); (3) a document titled "FIRST AMENDED COMPLAINT/JURY DEMAND," which the Court construes as a motion for leave to amend the complaint (ECF No. 41 at 6-13, "Mot. to Am. Compl.") (emphasis in original); and (4) a document designated "Exhibit A" which the Court construes as plaintiff's opposition to defendant's corrected motion for summary judgment (ECF No. 41-1 at 14-20, "Pl.'s Opp'n").[2]

Plaintiff argues that counsel's failure to supply him with an editable Word version of the State Department's Statement of Material Facts warrants denial of its motion for summary judgment in its entirety. *See* Pl.'s Mot. to Deny MSJ at 1. Given the "the clear preference of the Federal Rules to resolve disputes on their merits," *Cohen v. Bd. of Trustees of the Univ. of the District of Columbia*, 819 F.3d 476, 482 (D.C. Cir. 2016), the Court will not deny defendant's motion on this ground, *see, e.g., Orellana v. NBSB Inc.*, 332 F. Supp. 3d 252, 255 n.2 (D.D.C. 2018) (denying request to summarily deny "plaintiffs' motion because their Statement of

---

[2] The envelope (ECF No. 41 at 4) bears a date stamp indicating that the Clerk of Court received plaintiff's submission on August 12, 2019. Where, as here, a plaintiff addresses mail to a judge, the Clerk's practice is to forward the envelope and its contents to that judge for instruction. The first page of plaintiff's submission (ECF No. 41 at 1) bears the undersigned's authorization ("Leave to file GRANTED") on August 27, 2019, for the Clerk to docket plaintiff's submissions.

Undisputed Material Facts as to Which No Genuine Issue Exists in Support of Their Motion for Partial Summary Judgment does not comply with the Court's General Order").

Next, plaintiff attempts to put forth his own Statement of Material Facts Not In Dispute predicated upon defendant's purported failure to respond to his written discovery requests. Plaintiff claims to have "served 2 sets of Request[s] for Admission[] upon the Defendant during the course of the instant litigation." Pl.'s Opp'n at 1 (page numbers designated by plaintiff). The first set is attached to plaintiff's response (ECF No. 20, "Pl.'s Resp. to Notice,") to defendant's Notice to Court (ECF No. 15). It appears that plaintiff's requests for admission seek evidence supporting plaintiff's assertion that State Department officials conspired with government attorneys, including those who prosecuted the criminal case against him in the United States District Court for the Eastern District of Virginia, to cause plaintiff's detention and torture in Mexico. *See* Pl.'s Resp. to Notice at 2; Pl.'s Opp'n at 2.

According to plaintiff, he mailed a second set of requests for admission to defendant's counsel and to the Clerk of Court on March 5, 2019. Pl.'s Opp'n at 1. The Court denied leave to file this document (ECF No. 40) because, under the local civil rules of this Court, "requests for admissions . . . shall not be filed with the Clerk until they are used in the proceeding or upon order of the Court[.]" LCvR 5.2(a). However, a duplicate of this document is the submission the Court has treated as plaintiff's opposition to defendant's corrected motion for summary judgment (ECF No. 41-1 at 14-20).

Ordinarily, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection[.]" Fed. R. Civ. P. 36(a)(3). Because defendant did not respond to plaintiff's discovery requests, plaintiff now asserts that, among other purported facts, the State Department admits to having

violated FOIA.  *See* Pl.'s Opp'n at 2 ¶¶ 6-8; *see also id.* at 3 ¶¶ 9-10.  "[D]iscovery is

disfavored" in FOIA cases, *Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (citation

omitted), *aff'd*, 485 F. App'x 439 (D.C. Cir. 2012), and this Court did not, and would not, order

discovery in this case.  Defendant's failure to respond to plaintiff's requests for admission does

not establish its violation of FOIA.  And where plaintiff's opposition does address FOIA, it

merely challenges in broad terms the State Department's reliance on any FOIA exemption:

> Simply, there is no legal exemption in the United States Code or the
> Code of Federal Regulations that allows FOIA[] exemptions for
> admitted criminal acts nor is their [sic] any form of attorney client
> privilege for the commission and perpetuation of these admitted
> felonies.
>
> Because the Defendant has admitted that there are responsive
> documents being willfully withheld that prove it's [sic] employees
> and others did torture the Plaintiff, that there is an ongoing
> conspiracy to torture and conceal the torture of the Plaintiff, and that
> there is ongoing aiding and abetting and causing of same, there are
> NO LEGAL FOIA[] EXEMPTIONS, and therefore all documents
> must be produced entirely.

Pl.'s Opp'n at 4.

Despite the opportunity provided to plaintiff "to properly address [the State

Department's] assertion[s] of fact," Fed. R. Civ. P. 59(e), plaintiff has not done so.

Consequently, for purposes of this Memorandum Opinion, the assertions set forth in the State

Department's Corrected Statement of Material Facts As To Which There Is No Genuine Dispute

are deemed admitted.  *See* Fed. R. Civ. P. 56(e)(2) (authorizing the Court, when a non-moving

party "fails to properly address [the moving] party's assertion of fact as required by Rule 56(c),"

to "consider the fact undisputed for purposes of the motion"); *see Grimes v. District of

Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) (noting that plaintiff has "burden to identify

evidence that a reasonable jury could credit in support of each essential element of [his] claims"

and "cannot rely on the allegations of [his] own complaint in response to a summary judgment motion, but must substantiate them with evidence").

Nevertheless, "[a] defendant moving for summary judgment must . . . 'discharge the burden the rules place upon [it]: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.'" *Grimes*, 794 F.3d at 93 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring)) (additional citation omitted). "The burden that the movant 'always bears' is that of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 93-94 (quoting *Celotex*, 477 U.S. at 323). Here, the State Department meets its burden.

### 3. State Department's Searches for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness . . . and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (citations and internal quotation marks omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). A search need not be exhaustive, *see Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1995), and it need not be perfect, *see DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) ("[A]dequacy – not perfection – is the standard that FOIA sets.").

The State Department argues that its searches for records responsive to plaintiff's FOIA request were reasonable and adequate. *See* Def.'s Mem. at 5-7; State SMF ¶ 34. According to

the declarant, three State Department components – the same components plaintiff specifies in his FOIA request – are locations where responsive records likely would be maintained.  *See* Stein Decl. ¶ 18; State SMF ¶ 9.

### a. Office of the Legal Advisor

The Office of the Legal Advisor, the declarant explains, "furnishes advice on all legal issues, domestic and international, arising in the course of the [State] Department's work."  Stein Decl. ¶ 19.  It "provide[s] direct legal support to the [State] Department's various bureaus."  *Id.* He describes the search as follows:

> A Supervisory Paralegal Specialist in the Law Enforcement and Intelligence ("L/LEI") office, who was knowledgeable of both the FOIA request and L/LEI's records systems, conducted a search of . . . entire unclassified and classified emails, which are organized by country, using the following combination of terms: "Mexico + Day" for the dates August 2008 to March 28, 2018, the date the search was conducted. The Specialist also searched the office shared drive, which is organized by country and the subject's last name. She manually searched the "Day, Charles Roger" subfolder within the "Mexico" folder on the electronic shared drive without applying a date range restriction.

*Id.* ¶ 20.  "Responsive records were located as a result of these searches."  *Id.*

### b. United States Embassy in Mexico City

The declarant explains that, generally, each United States embassy conducts activities to promote foreign policy objectives of the United States, to protect the United States' interests, and to protect United States citizens abroad.  *See id.* ¶ 21.  He describes the initial search of embassy records as follows:

> At the direction of the Information Management Specialist, the Embassy Mexico City FOIA Control Officer and an American Citizen Service ("ACS") Consular Specialist, who were knowledgeable of both the FOIA request and the Embassy's records systems, searched the Mexico City electronic shared drive using the search terms "Roger Day," "Roger Charles Day," "Roger Day, Jr.,"

> "Roger Charles Day Jr.," or "Charles Day." The search included
> Word documents, spreadsheets, and the [ACS] shared electronic
> drive, which is organized by subject. The timeframe of the search
> was January 1, 2008, to December 31, 2011. The ACS Consular
> Specialist also searched her individual emails using the search terms
> "Roger Day," "Roger Charles Day," "Roger Day, Jr.," "Roger
> Charles Day Jr.," or "Charles Day." The timeline of the search was
> January 1, 2008, to December 31, 2011.

*Id.* ¶ 22. These searches yielded responsive records. *Id.* Staff also searched the embassy's paper

files which are organized by year and alphabetically by surname, and searched arrest and

detention files for closed cases. *Id.* Although there had been a file pertaining to plaintiff, it was

destroyed in 2014 pursuant to a three-year records disposition schedule. *Id.*

### c. Office of Overseas Citizens Services, Bureau of Consular Affairs

Among other duties, the Office of Overseas Citizens Services ("OCS") in the Bureau of

Consular Affairs ("CA") "provides emergency and non-emergency services to assist overseas

U.S. citizens and persons in the United States who are concerned about them, in the event of

arrest, death, destitution, disaster, or medical emergency." *Id.* ¶ 23. The declarant describes the

search of OSC records as follows:

> A Country Officer, who is knowledgeable of both the FOIA request
> and the OSC's record systems, conducted a search of the office's
> electronic shared drive and the American Citizens Services Plus
> ("ACS+") database using search terms "Roger Day" or "Roger
> Charles Day." The electronic shared files are organized by country.
> He searched the shared drive under the file labeled "Mexico," and
> he subsequently searched the ACS+ database using the same search
> terms. The ACS+ database is a case management database designed
> to support ACS activities at overseas posts and in Washington, D.C.
> It is used to track services provided to U.S. citizens traveling or
> living abroad. The system primarily contains entries made by
> overseas posts regarding their actions on individual cases. This
> includes, but is not limited to, passport applications, citizenship
> applications for minors, welfare and whereabout cases, financial
> service applications, arrests, detentions and deaths. These searches
> were not limited by date. The Country Officer also searched his
> individual emails using the search terms "Roger Day" or "Roger
> Charles Day." This search was not limited by date.

*Id.* ¶ 24.  These searches yielded no responsive records.  *Id.*

Plaintiff raises no objection to the scope or methods of the searches described above. Instead, he states that he "has repeatedly requested the Defendant search it's [sic] records concerning the 'RSO' in Belize in 2007," yet the State Department "has specifically and intentionally ignored this request."  Pl.'s Opp'n at 4 n.2.  No reasonable interpretation of FOIA Case Control Number P-2013-1467, which pertained to plaintiff and events occurring in Mexico between 2008 and 2011, would have called for a search of records about to Belize in 2007.  An agency "need not expand [its] searches beyond 'the four corners of the request[.]'"  *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003) (quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)).  The State Department does not run afoul of FOIA by failing to search for or produce records other than those related to his August 9, 2013, request.

Based on the State Department's supporting declaration, the Court concludes that the agency's searches for records responsive to plaintiff's FOIA request were reasonable.

### 3. Exemptions 5, 6 and 7(C)

#### a. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters."  *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).  Federal government agencies may avail themselves of civil discovery privileges to withhold information otherwise responsive to a FOIA request.  *See*

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980).  The declarant

explains that the State Department has withheld certain information under the deliberative

process, attorney work product and attorney-client privileges.  *See* Stein Decl. ¶ 26; State SMF

¶¶ 28-29.

### *i*. Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both

predecisional and deliberative.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997)

(quoting *Wolfe v. Dep't of Health & Human Servs*., 839 F.2d 768, 774 (D.C. Cir. 1988) (en

banc)).  To show that a document is predecisional, the agency need not identify a specific final

agency decision; it is sufficient to establish "what deliberative process is involved, and the role

played by the documents at issue in the course of that process."  *Heggestad v. U.S. Dep't of

Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868).  A

document is "deliberative" if it "makes recommendations or expresses opinions on legal or

policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The declarant explains that certain information in the responsive records includes the

"candid views and advice of U.S. Government officials in their internal deliberations related to

policy formation and administrative direction."  Stein Decl. ¶ 26.  For example, the State

Department withholds in full a declaration pertaining to plaintiff's extradition charges.  *See*

Vaughn Index at 6 (Doc. No. C06545253).  According to the declarant, this document is pre-

decisional and deliberative insofar as it precedes "a final decision on [its] content."  *Id*.  Release

of this document, the declarant asserts, "could reasonably be expected to chill the open and frank

exchange of ideas and recommendations that occur when U.S. Government officials are

developing a litigation strategy," and "would impede . . . the ability of . . . government officials

to formulate and carry out executive branch programs by inhibiting candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action." *Id*. at 6-7.

### ii. Attorney Work Product Privilege

Records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see Tax Analysts*, 117 F.3d at 620 (stating that "work product doctrine protects . . . deliberative materials" such as an attorney's opinions, conclusions, and legal theories, as well as "factual materials prepared in anticipation of litigation"). According to the declarant, the State Department withholds attorney work-product including legal analyses of State Department and Justice Department attorneys, prosecutors' theory of the case and evaluation of evidence, as well as Justice Department "attorneys' assessments of facts and issues pertaining to the requests for extradition pursuant to the Extradition Treaty." Stein Decl. ¶ 26; *see* Vaughn Index at 7-8 (Doc. Nos. C06545262 and C06545288). Its disclosure "would inhibit essential investigative and decision making processes," Stein Decl. ¶ 26, and disclose the attorneys' "general strategy and tactical approach to investigating and prosecuting this type of case," *id*. For example, the State Department withholds from memoranda regarding plaintiff's extradition materials "prepared by or at the direction of . . . attorney[s]" reflecting the "attorneys' mental impressions and legal strategies in connection with ongoing litigation[.]" Vaughn Index at 8.

### iii. Attorney-Client Privilege

"Exemption 5 protects, as a general rule, materials which would be protected under the attorney-client privilege[.]" *Coastal States Gas*, 617 F.2d at 862 (citing *Mead Data Cent.,*

*Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 252–55 (D.C. Cir. 1977)). For example,

"confidential communications from clients to their attorneys made for the purpose of securing

legal advice," *Tax Analysts*, 117 F.3d at 618 (citing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.

Cir. 1984)), can be protected under Exemption 5. "In the governmental context, the 'client' may

be the agency and the attorney may be an agency lawyer." *In re Lindsey*, 148 F.3d 1100, 1104

(D.C. Cir. 1998) (per curiam) (quoting *Tax Analysts*, 117 F.3d at 618) (additional citation

omitted). Here, the State Department withholds confidential communications between clients

seeking and attorneys providing legal advice. Stein Decl. ¶ 26; *see, e.g.,* Vaughn Index at 4-5

(Doc. Nos. C06545285, C06545286, C05741899, C05741891).

Based on the Court's review, the State Department's supporting declaration and Vaughn

Index adequately describe the information withheld under Exemption 5 and justify the agency's

decision to withhold certain information under the deliberative process, attorney work product

and/or attorney-client privileges.

### b. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.

§ 552(b)(6). The Court's first task is to determine whether the responsive records are personal,

medical or similar files. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir.

2008). Next, the Court determines whether disclosure of the third-party information "would

constitute a clearly unwarranted invasion of personal privacy." *Id.* (quoting 5 U.S.C.

§ 552(b)(6)). "This second inquiry requires [the Court] to balance the privacy interest that would

be compromised by disclosure against any public interest in the requested information." *Id.*

(citations omitted). The only relevant public interest in this context harkens back to the principal

purpose of the FOIA: to "shed[] light on an agency's performance of its statutory duties[.]" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

The State Department withholds under Exemption 6 personally identifiable information including names, personal cell phone numbers, and email addresses of State Department officials, other United States government officials, and private individuals. Stein Decl. ¶ 31. Such information appears in correspondence, *see, e.g.,* Vaughn Index at 1 (Doc. Nos. C06505602 and C06505607), emails, *see, e.g., id.* at 3 (Doc. Nos. C06545254 and C06545258), cables, *see, e.g., id.* at 5 (Doc. Nos. C06545290, C06545296 and C06490868), a declaration, *see, e.g., id.* at 6 (Doc. No. C06545253), memoranda, *see, e.g., id.* at 7 (Doc. Nos. C06545262 and C06545288), and other documents, *see, e.g., id.* at 9 (Doc. No. C06490723, Visitation Record).

Protection under Exemption 6 is not limited to "a narrow case of files," and instead "cover[s] detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). In other words, Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, *id.* at 599, regardless of "the label on the file," *id.* at 601 (citation omitted). The Court is satisfied that documents like the ones identified above qualify as "similar files" for purposes of Exemption 6.

The declarant avers not only that "disclosure of the information withheld would result in a clearly invasion of personal privacy," but also that "disclosure of the information would not serve the 'core purpose' of the FOIA." Stein Decl. ¶ 31. On review of the declaration and Vaughn Index, and absent any meaningful objection by plaintiff, the Court concludes that the State Department's decision to withhold personally identifying information from the responsive

records is proper. *See, e.g., Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 553-54 (D.D.C. 2014) (withholding "the name of a third party on a cover memo that transmitted the reports of two deaths abroad").

### c. Exemption 7

#### *i*. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

The declarant explains that the Law Enforcement and Intelligence Office's "mission . . . includes handing extradition matters and supporting law enforcement proceedings involving foreign governments." Stein Decl. ¶ 33. In plaintiff's case, it appears that State Department officials were working with attorneys and officials at the U.S. Department of Justice, described by the declarant as "the U.S. Government's premier law enforcement agency," *id.*, to effect plaintiff's extradition and arrest. These qualify as law enforcement activities, and based on the declaration, certain of the responsive records were compiled for law enforcement purposes. These documents include cables from the State Department's Office of the Legal Advisor to the U.S. Embassy in Mexico City requesting plaintiff's extradition, *see, e.g.*, Vaughn Index at 4-5 (Doc. Nos. CO6545285, CO6545286, CO5741889 and CO5741891), and referencing plaintiff's

extradition arrest, *see e.g., id.* at 5 (Doc. Nos. CO6545290, CO6545296, CO6490686). The State Department thus demonstrates that certain of the responsive records were compiled for law enforcement purposes and therefore fall within the scope of Exemption 7.

### *ii*. Exemption 7(C)

Exemption 7(C) protects from disclosure information found in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted). The privacy interest at stake belongs to the individual, not the government agency. *See Reporters Comm.*, 489 U.S. at 763-65. The D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

The State Department withholds "certain information about federal law enforcement personnel under Exemption 7(C)." Stein Decl. ¶ 34. For example, from two cables the State Department withholds the name of and contact information about Justice Department and State Department personnel, asserting disclosure of the information makes it reasonably likely that these individuals would "face harassment for decisions they have made in individual extradition

17

cases." Vaughn Index at 5 (Doc. Nos. C06545290, C06545296 and C06490686). From a declaration about plaintiff's extradition charges, the State Department redacts the name of a State Department official, asserting that disclosure reasonably "could subject [him or her] to harassment or intimidation" without "shed[ding] light on the operations and activities of the U.S. government." *Id*. at 6-7 (Doc. No. CO6545253). Similarly, the State Department withholds the name of the Mexico City Vice Consul from a letter to the Immigration Inspector at the Mexican Port of Entry on the ground that its release "could subject him to harassment or intimidation . . . for decisions . . . made in individual extradition cases." *Id*. at 11-12 (Doc. No. CO6505614). In these and other instances, the State Department's declarant adequately explains the law enforcement purpose of each document, describes the harm which could reasonably result from disclosure of this third-party information, and avers that no public interest outweighs the third parties' privacy interest. Here, the identities of third parties appearing in law enforcement records are "categorically . . . exempt from disclosure." *SafeCard Servs*., 926 F.2d at 1206. Plaintiff's unsupported assertions of "heinous acts of torture," *see* Pl.'s Opp'n at 4, for which defendant is allegedly responsible, do not demonstrate a public interest of sufficient magnitude to outweigh the third parties' privacy interest.

### 4. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S.*

*Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)). On review of the State Department's supporting declaration and particularly its Vaughn Index, the Court concludes that the agency has released all reasonably segregable information.

### B. Plaintiff's Motion to Amend the Complaint

Plaintiff's original complaint, filed on July 14, 2017, raised a single claim under FOIA against the State Department challenging its response to Case Control Number P-2013-14671. Roughly two years later, plaintiff seeks to amend his complaint by naming more than 16 additional defendants, raising claims under the Torture Victim Protection Act, the United Nations Convention Against Torture, and the Racketeering Influenced and Corrupt Organizations Act, and demanding hundreds of millions of dollars in damages. *See generally* Mot. to Am. Compl.

Generally, "a district court should grant leave to amend a complaint "[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (brackets in original). On consideration of plaintiff's motion and the State Department's opposition (ECF No. 42), the Court will deny leave to amend for three reasons.

First, the events giving rise to plaintiff's "new" claims occurred between August 2009 and December 2010 while plaintiff was detained in Mexico. These are events about which plaintiff knew in 2017 when he filed his original complaint, and he puts forth no reason for his

delay in bringing these claims. If plaintiff were allowed to amend his complaint at this late date, both the current and the newly named defendants are prejudiced.

Second, the claims plaintiff raises in his proposed amended complaint far exceed the scope of his original complaint. This presents a dramatic departure from a straightforward FOIA case to a complex civil action involving, among others, past and present Attorneys General and foreign nationals. While there is no apparent bad faith or dilatory motive on plaintiff's part, plaintiff offers no valid reason to introduce essentially an entirely new civil action when the single issue in this FOIA matter is ripe for resolution. *See Szymanski v. DEA*, No. 93-cv-1314, 1993 WL 433592, at *2 (D.D.C. Oct. 5, 1993) (denying leave to amend where the proposed amended complaint "adds additional claims and parties that are unrelated to what was a straightforward F.O.I.A. dispute"); *Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991) ("Where . . . the complaint, as amended, would radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action, leave to amend should be denied.").

Third, insofar as plaintiff's new claims arise from events occurring in Mexico and are made against Mexican nationals and others who reside or had resided in Mexico, it is not clear that the District of Columbia is the proper forum for their resolution or that this district court ma exercise personal jurisdiction over certain of the would-be defendants.

## III. CONCLUSION

The State Department has demonstrated that there is no genuine issue in dispute as to its compliance with FOIA: its searches for records responsive to plaintiff's FOIA request were reasonable; its decisions to withhold information under Exemptions 5, 6 and 7(C) were proper; and the agency released all reasonably segregable information. Accordingly, Defendant's

Corrected Motion for Summary Judgment will be granted and plaintiff's motion to amend his complaint will be denied.  An Order is issued separately.


DATE: March 6, 2020                                    /s/
                                                                    EMMET G. SULLIVAN
                                                                    United States District Judge